UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:09-CR-91 |
| | ) | (VARLAN/SHIRLEY) |
| DAMIEN OSHEA ELMORE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge C. Clifford Shirley on December 30, 2009 [Doc. 32]. The defendant, Damien Oshea Elmore, filed objections to the R&R [Doc. 35] and the United States filed a response to the defendant's objections [Doc. 36], urging the Court to adopt in whole the R&R. The Court gives *de novo* consideration to the defendant's objections.

**I.    RELEVANT FACTS**

The defendant is charged with knowingly possessing, in and affecting commerce, a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) [*see* Doc. 1]. This charge arose from a police officer's investigative stop on July 13, 2009 of a vehicle the defendant was driving [Doc. 32, p. 1]. In addition to the defendant, a passenger was also present in the vehicle [*Id.*]. Following the stop, the police officer told the defendant to exit the vehicle and produce his driver's license [Doc. 25, p. 6]. The

defendant did so and informed the police officer that he did not have a driver's license [*Id.*]. The police officer conducted a records check and determined that the defendant's driver's license had been suspended [*Id.*, p. 7]. The police officer then walked around to the passenger side of the vehicle and asked the passenger to "open the door." [*Id.*]. When the passenger opened the door, the police officer observed a holster in the door mat compartment of the vehicle [*Id.*]. Both the defendant and the passenger denied ownership of the holster [*Id.*]. As the police officer removed the passenger from the vehicle, she observed a handgun lying underneath the right rear of the vehicle [*Id.*]. Both the defendant and the passenger were placed under arrest [*Id.*, p. 8]. The handgun was subsequently determined to have been stolen [*Id.*]. Police officers subsequently searched the entire vehicle and the defendant's person, discovering, in the defendant's pocket, a black sock and an object the government describes as "a pillowcase with two eyes cut into it." [Doc. 22, p. 2].

Following his arrest, the defendant filed two motions to suppress [Docs. 12, 13]. The defendant subsequently withdrew his second motion to suppress [Doc. 13], and filed an amended version of his first motion to suppress [Doc. 19]. The defendant's amended motion to suppress requests that the Court suppress the handgun discovered on the ground beneath the passenger side of the vehicle [*Id.*]. The defendant argues that the investigative stop was a "seizure" of his person within the meaning of the Fourth Amendment and was not justified by any reasonable suspicion that either he or the passenger in the vehicle were engaged in criminal activity [Doc. 20, p. 2]. Thus, the defendant argues, the Court should suppress the

handgun discovered underneath the vehicle as fruit of the poisonous tree of the unlawful stop and seizure [*Id.*, p. 4; Tr. 20-21].

An evidentiary hearing was held before Magistrate Judge Shirley on the defendant's motions to suppress. The defendant was present but did not testify. Following the hearing, the parties submitted post-hearing briefs [Docs. 28, 29, 30, 31]. On December 20, 2009, Magistrate Judge Shirley entered the R&R, recommending that the motions to suppress be granted in part, to the extent that the holster should be suppressed, and denied in part, to the extent that the handgun discovered underneath the vehicle should not be suppressed [Doc. 32, p. 33].

## II. STANDARD OF REVIEW

As required by 28 U.S.C. § 636(b)(1)(B), the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant objects. In doing so, the Court has carefully considered Magistrate Judge Shirley's R&R [Doc. 32], the underlying briefs [Docs. 12, 19, 10, 22],[1] the hearing transcript [Doc. 25], the parties' post-hearing briefs [Docs. 29, 29, 30, 31], and the defendant's objections [Doc. 32]. For the reasons set forth herein, the Court will overrule the defendant's objections, and adopt in whole the findings of the R&R [Doc. 32]. Accordingly, the defendant's motions to suppress [Doc. 12, 19] will be granted, in part, and denied in part.

---

[1] The defendant subsequently withdrew the motion to suppress evidence [Doc. 13], filed on September 11, 2009.

3

## III. ANALYSIS

### A. Fruit of the Poisonous Tree

Evidence obtained as a direct result of an unconstitutional search or seizure is subject to exclusion. *Segura v. United States*, 468 U.S. 796, 804 (1984). The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search and seizure, but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." *Segura*, 468 U.S. at 804; *Nardone v. United States*, 308 U.S. 338, 341 (1939) (first coining the phrase "fruit of the poisonous tree"). "The question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* at 804-05 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1964)) (citations omitted). It is well established that evidence will not be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is "so attenuated as to dissipate the taint . . . ." *Id.* at 805 (quoting *Nardone*, 308 U.S. at 341).

Magistrate Judge Shirley found that the police officer's investigative stop of the vehicle the defendant was driving amounted to a Fourth Amendment seizure of the vehicle, the defendant, and the passenger [Doc. 32, p. 11]. The seizure, the Magistrate Judge found, did not arise from the police officer's reasonable or particular suspicion of any criminal activity. Thus, the police officer's seizure of the defendant, the passenger, and the vehicle violated rights protected under the Fourth Amendment [*Id.*, p. 19]. In light of the unlawful

4

seizure, the Magistrate Judge found that the evidence that was derived from or obtained as a direct result of the unlawful seizure of the defendant, the passenger, and the vehicle, should be suppressed as inadmissible [*Id.*, p. 20]. In accordance with this finding, Magistrate Judge Shirley suppressed all evidence recovered from the persons of the defendant and the passenger, and all evidence recovered from the inside of the vehicle [*Id.*]. This includes the holster discovered in the door mat compartment of the vehicle and the pillowcase and black sock discovered in the defendant's pocket.

Magistrate Judge Shirley found, however, that the handgun discovered *outside* the vehicle, underneath the right rear of the vehicle, should not be suppressed because it was not derived from or obtained as a direct result of the unlawful conduct [Doc. 32, p. 20]. This is the part of the R&R to which the defendant objects.[2] Magistrate Judge Shirley found that the discovery of the handgun was not "come at by exploitation of" the unlawful stop because it was discovered through the police officer's "passive observation" of the ground beneath the vehicle [*Id.*, p. 27]. In other words, the police officer's observation of the handgun occurred apart from and not by exploitation of the unlawful stop because the police officer did not take any additional, active step to discover the handgun, such as looking for evidence of criminal activity [*Id.*]. Further, the discovery of the handgun was contemporaneous to, and thus, cannot be said to be derived from, the police officer's unlawful seizure of the defendant, the

---

[2]The defendant states that he has "no quarrel with the facts as stated by the Magistrate Judge" and that his argument is not with "the law the Magistrate Judge used, but his application of the facts of this case to that law." [Doc. 35, pp. 1-2].

5

passenger, and the vehicle [*Id.*]. Thus, the Magistrate Judge concluded, the police officer's discovery of the handgun was not tainted by the unlawful conduct [*Id.*, pp. 27-28].

Magistrate Judge Shirley supported this conclusion with an analysis of the concept of attenuation, explained at length by the United States Supreme Court in *Hudson v. Michigan*, 547 U.S. 586 (2006). Quoting from *Hudson*, Magistrate Judge Shirley explained that attenuation occurs when the causal connection between the unlawful conduct and the discovery of the evidence is remote. *Hudson*, 547 U.S. at 593. Attenuation may also occur "when, given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id*.

The facts of this case, the Magistrate Judge found, did not present a case of causal attenuation, but a case of the second type of attenuation—interest attenuation. In other words, suppression of the handgun, discovered on the ground *outside* the defendant's vehicle, would not serve to protect the rights and interests afforded to citizens under the Fourth Amendment—namely, the defendant's interest in his personal privacy and his interest in freely going about his business [Doc. 32, p. 29]. *See Terry v. Ohio*, 392 U.S. 1 (1968); *see also California v. Hodari, D.*, 499 U.S. 621, 628 (1991).[3] The Magistrate Judge found that

---

[3]The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. A "seizure" of a person within the meaning of the Fourth Amendment occurs when a police officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 20 n.16. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. *Id.* Under *Terry* and its progeny, officers must have a reasonable and articulable suspicion for seizing an individual. *Id.* at 21, 27; *United States v. Taylor*, 917 F.2d 1402, 1405 (6th Cir. 1990).

6

in discovering the handgun *outside* the vehicle, the police officer did not intrude upon the defendant's privacy, and did not intrude upon the defendant's interest in going about his business. This is distinguishable, the Magistrate Judge determined, from the interests intruded upon by the police officer's discovery of the holster *inside* the vehicle, as both interests—the defendant's interest in his privacy and his interest in going about his business—were implicated by that discovery.

The defendant objects to this conclusion, arguing that if unlawful conduct is used to gain a vantage point from where a police officer is able to observe evidence, such evidence is then a direct result of that unlawful conduct [Doc. 35, p. 3]. Further, the defendant argues, the discovery of the handgun in this case occurred at the same time the police officer was engaged in the unlawful conduct of seizing the defendant's person, the passenger, and the vehicle. The defendant argues that the police officer's discovery of the gun was not a "passive observation" merely contemporaneous to the unlawful seizure, but a direct result of the police officer's continuing violation of the defendant's rights, a violation that began with the unlawful investigative stop of the defendant, and continued throughout the seizure of the defendant's person, the passenger, and the vehicle [*Id.*, pp. 3-4].

The defendant argues that because there was no break in the continuum of the unlawful conduct that began with the stop and cumulated in the seizure and discovery of the handgun, there can be no attenuation from the police officer's unlawful conduct in the stop and seizure and her discovery of the handgun. In other words, the police officer's violation

7

of the defendant's rights and interests under the Fourth Amendment did not cease following the stop but continued throughout the stop, the discovery of the handgun, and the seizure of the vehicle and its occupants. Thus, the defendant concludes, the police officer's discovery of the handgun was a direct result of her unlawful conduct and therefore the unlawful conduct "taints" the discovery of the handgun and there "can be no clearer case of fruit of the poisonous tree."

### B. Attenuation

Magistrate Judge discussed three cases from the United States Court of Appeals for the Sixth Circuit in which the concept of attenuation was considered in three different contexts. In all three cases, the ultimate finding of the courts was that the concept of attenuation did not negate the illegality of the unlawful conduct of the police, and thus, suppression of the evidence was warranted in each case. *See United States v. Buchanon*, 72 F.3d 1217, 1225-28 (6th Cir. 1995) (concluding that a canine sniff of the defendant's vehicle, made possible by an unlawful seizure, requires suppression of the discovered evidence); *United States v. Richardson*, 949 F.2d 851, 858-59 (6th Cir. 1991) (holding that the taint of an illegal arrest "vitiated [the defendant]'s consent" to a search); *United States v. Grant*, 920 F.2d 376, 388 (6th Cir. 1990) (holding that the taint of the agent's prior unlawful seizure remained on the evidence even after the defendant had consented to a search of his bag because his conduct was not "the product of an intervening act of free will") (quoting *Wong*

8

*Sun*, 371 U.S. at 486).[4] From these cases, Magistrate Judge Shirley deduced two characteristics distinguishing these cases from the facts of this case. First, in *Buchanon*, *Richardson*, and *Gant*, the police unlawfully seized the defendant and after that unlawful seizure, took some additional active step apart from the initial unlawful conduct to discover the evidence of criminal activity. Second, in *Buchanon*, *Richardson*, and *Gant*, the defendant had a constitutionally protected privacy interest in the object and location searched by the police and where the evidence was discovered.

The facts of this case, Magistrate Judge Shirley concluded, are distinguishable. First, the police officer did not take any additional active step in discovering the handgun, but only passively observed the handgun contemporaneously with the seizure. Second, the handgun was lying on the surface of an alleyway *outside* the defendant's vehicle—an alleyway connecting a public street to a parking lot—and a location in which the defendant had no privacy interest. Moreover, the defendant did not, and has not since, claimed any privacy, possessory, or ownership interest in the handgun. Accordingly, Magistrate Judge Shirley found, the defendant he cannot be said to have any privacy, possessory, or ownership interest violated by the police officer's conduct.

The defendant argues that the facts of this case cannot be distinguished from the principle underlying *Buchanon*, *Richardson*, and *Gant*. Specifically, that once an unlawful

---

[4]Magistrate Judge Shirley discussed and analyzed the facts of each case and the Court will not do so again here. Moreover, the defendant has not objected to the Magistrate Judge's articulation of the facts and the distinguishing characteristics, but instead suggested that such facts and distinguishing characteristics do not detract from his argument that the handgun is fruit of the poisonous tree.

9

stop occurs, followed by an unlawful seizure, evidence obtained as a result of that conduct is tainted because of the initial illegality. In other words, the police officer's observation of the gun was not merely contemporaneous to the unlawful seizure, but was a direct result of the unlawful stop and seizure. Such facts, the defendant argues, would not, by way of comparison, satisfy the plain view doctrine, the exception to the requirement that a search be conducted pursuant to a warrant. *See Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993).

The plain view doctrine provides that "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *Id.*; *see Horton v. California*, 496 U.S. 128, 136-37 (1990). The rationale underlying this plain view doctrine "is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota*, 508 U.S. at 375. The defendant asserts that, similar to the plain view doctrine, police officers must "lawfully [be] in a position" in which to see evidence. *Horton*, 496 U.S. 136-37. If a police officer, such as the officer in this case, arrives at a position from which he or she is able to see evidence because of a previous unlawful stop and seizure, the discovery of the evidence—the handgun in this case—cannot be said to be anything but the direct result of the unlawful conduct, and thus, constitutes fruit of the poisonous tree.

This issue is a close one, however, upon consideration of the facts of this case, the Court does not reach a different conclusion than the Magistrate Judge. The defendant urges comparison to the plain view doctrine. However, the plain view doctrine also contemplates that the defendant did not have a legitimate expectation of privacy in the area or evidence at issue because such was observable, by the police officer, in "open view." *Minnesota*, 508 U.S. at 375. The defendant in this case, however, did not have a legitimate expectation of privacy in the handgun or the surface of the alleyway on which the handgun was discovered. Moreover, the defendant has not, in either the submitted briefs or at the evidentiary hearing, asserted ownership, a privacy right, or a possessory interest in the handgun [Doc. 32, p. 26].

As to the question of whether the evidence was "observed by a police officer from a lawful vantage point," Magistrate Judge Shirley found that "at most [the police officer] 'exploited' the unlawful stop to acquire a vantage point that allowed her to passively observe" the ground underneath the defendant's vehicle [Doc. 32, p. 27]. The defendant contends that the result of the police officer's "exploitation" of the unlawful stop was not merely the fact that the police officer secured a "vantage point," but the fact that she actually discovered the handgun underneath the vehicle. Thus, the defendant argues, there was no break in the unlawful conduct that would serve to dissipate the taint of the police officer's unlawful conduct because she would not have been in that position if not for the unlawful conduct.

"[E]xclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence. *Hudson*, 547 U.S. at 592. Instead, only evidence

11

"come at by exploitation of the primary illegality or instead by means sufficiently distinguishable to be purged of the primary taint" is considered to be fruit of the poisonous tree that must be suppressed. *Wong Sun*, 371 U.S. 488. This goes back to Magistrate Judge Shirley's conclusion that the police officer cannot be said to have exploited the unlawful stop because she did not take any additional active or deliberate steps in the process of discovering the handgun that would lend itself to a finding of "exploitation," such as that which occurred in *Buchanan*, *Richardson*, and *Gant*. While the concept of an additional step is not explicitly discussed in these three cases, this concept comports with the plain meaning of "exploitation" and also coincides with the Supreme Court's articulation of the purpose of the exclusionary rule, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 129 S.Ct. 695, at 702 (Jan. 14, 2009). The Supreme Court concluded that the exclusionary rule should operate only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* In this case, the Court cannot categorize the police officer's conduct, her passive observation of the handgun, as being exploitative of her unlawful conduct, or sufficiently deliberate so as to warrant exclusion. *See Segura*, 469 U.S. at 804 (reasoning that the exclusionary rule is properly applied where it will serve as an effective deterrent to unconstitutional police behavior; *see Terry*, 392 U.S. at 13.

12

Somewhat helpful to the Court in analyzing this issue, and noted, in a footnote, by the Magistrate Judge, the Sixth Circuit in *United States v. Pearce*, 531 F.3d 374 (6th Cir. 2008) considered a hypothetical with several similarities to the facts of this case [*see* Doc. 32, p. 28 n.13]. In the hypothetical, one police officer unlawfully stopped and seized a vehicle. *Pearce*, 531 F.3d at 383. Following this unlawful conduct by the first police officer, a second police officer observed evidence of criminal activity inside the vehicle as he walked past it. *Id.* at 383 n.2. The *Pearce* court stated that "[the second officer]'s observation of [the evidence] as he walked by the [vehicle]–something which he arguably would have done anyway, as part of his sweep of the area, regardless of [the first officer]'s stop of [the defendant]–seems to constitute a means of discovery 'sufficiently distinguishable to be purged of the primary taint' of [the first officer]'s allegedly illegal stop." *Id.* (internal citations omitted).

While the *Pearce* court's hypothetical is distinguishable from the facts of this case in several important aspects—it involves two police officers, the stop was presumably conducted in a "high-crime area," and the evidence was discovered inside, as opposed to outside the vehicle—the principle it captures is instructive. The principle being that unlawful conduct that places a police officer in the position to observe evidence may still be sufficiently distinguishable from the police officer's actual observance of the evidence, enough so as to purge the primary taint of the initial unlawful conduct. This, coupled with the factors discussed by the Magistrate Judge—that the police officer in this case took no additional active or deliberate steps apart from the initial unlawful stop and seizure in her

13

discovery of the handgun, the defendant's lack of a privacy, possessory, or ownership interest in the handgun, and the location of the handgun *outside* the vehicle as opposed to *inside* the vehicle—are factors sufficient, the Court finds, to dissipate the taint of the unlawful conduct.

### C. Abandonment as a Result of Police Misconduct

As Magistrate Judge Shirley correctly noted, when a defendant's abandonment of property is precipitated by an unlawful seizure, that is, when a defendant's voluntary abandonment of property is caused by the unlawful conduct of a police officer, that property must be suppressed. *See, e.g., United States v. Coggins*, 986 F.2d 651, 653 (3rd Cir. 1993); *United States v. Wilson*, 953 F.2d 116, 127 (4th Cir. 1991); *United States v. Beck*, 602 F.2d 726, 730 (5th Cir. 1979). In light of this principle, the defendant objects that the Magistrate Judge failed to consider the circumstantial evidence that the defendant or the passenger voluntarily abandoned the handgun after the police officer's unlawful stop and thus, the handgun was tainted by the illegality of the stop and must be suppressed.

The defendant argues that the facts presented in *United States v. Beck*, a case the Magistrate Court discussed in the R&R, are similar to the facts of this case. *Beck*, 602 F.2d 726 (5th Cir. 1979). In *Beck*, after unlawfully stopping a vehicle, the police officer saw what appeared to be a cigarette come out of the driver's side window. *Id.* at 727. The police officer walked around the side of the vehicle and picked the cigarette up off the ground. *Id.* The cigarette appeared to be, and was, marijuana. *Id.* The police officer then noticed a small plastic bag which contained a syringe and more marijuana on the ground beside the driver's open door. *Id.* The police officer looked in the vehicle and saw, in plain view, another

14

syringe on the floorboard behind the driver's seat. *Id.* The Fifth Circuit held that the cigarette, the plastic bag, and the syringe found outside the vehicle were "presumably discarded at the same time" and that it "would be sheer fiction to presume [the abandonment was] caused by anything other than the illegal stop." *Id.* at 730.

Contrary to the defendant's assertion, the situation that occurred in *Beck* is not the situation that occurred in this case. Rather, the police officer in this case did not observe the handgun being tossed from the vehicle and did not even observe it falling from the vehicle. No direct evidence was presented, by either party, indicating that the handgun was in the possession of the defendant or the passenger either prior to, during, or after the stop, and no proof was established that the handgun was abandoned, either prior to, during, or after the police officer's stop of the vehicle. Instead, as Magistrate Judge Shirley correctly noted, the Court has only been presented with circumstantial evidence of ownership and abandonment. Such evidence, as the parties are free to argue at trial, can lead to different inferences, and thus, different conclusions [*see* Doc. 28, p. 5; Doc. 31, p. 1; Doc. 35, pp. 5-6]. Any finding otherwise, by the Magistrate Judge or by this Court, would constitute speculation.

## IV.   CONCLUSION

For the reasons stated herein, and because the Court determines that the handgun discovered underneath the vehicle the defendant was driving was not fruit of the poisonous tree, the defendant's Objections to Report and Recommendation [Doc. 35] are hereby **OVERRULED**, and the Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 32] of Magistrate Judge Shirley. Accordingly, the defendant's motions to suppress

15

[Docs. 12, 19] are hereby **GRANTED** in part, to the extent that the holster should be suppressed, and **DENIED** in part, to the extent that the handgun should not be suppressed.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE